IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ANN SCHRIM and <br> FRANK SCHRIM, <br><br>           Plaintiffs, <br><br>           v. <br><br> CAMPBELL SOUP COMPANY and <br> TARGET CORPORATION, <br><br>           Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action 05-1496 |

<u>MEMORANDUM ORDER</u>

CONTI, District Judge.

      In this memorandum order, the court considers the motion for summary judgment (Doc. No. 26) filed by defendants Campbell Soup Company ("Campbell Soup") and Target Corporation ("Target," together with Campbell Soup, the "defendants") with respect to all claims against defendants asserted by plaintiffs Mary Ann Schrim ("M.S.") and her husband, Frank Schrim ("F.S.," together with M.S., the "plaintiffs"). These claims include M.S.'s claims of strict product liability based upon alleged failure to warn against manufacturer Campbell Soup and seller Target and F.S.'s claim of loss of consortium against both defendants. After considering the joint statement of material facts and the respective submissions of the parties, the court will grant defendants' motion for summary judgment on all claims for the reasons set forth herein.

1

*Factual Background*

On October, 31 2003, M.S. was working at Rubey's Dry Cleaning. Defendants' Appendix to Concise Statement of Material Facts ("Def. App."), Ex. A (Deposition of Mary Ann Schrim)("Schrim Dep.") at 18, 42. At the time of the incident M.S. was alone in the building and preparing Campbell's Soup at Hand, the product at issue in this lawsuit (the "product"), for her lunch. (Schrim Dep. at 42).

M.S. was in the habit of eating tomato-flavored Campbell's Soup at Hand every Friday at work since Campbell Soup introduced the product to the market in approximately 2002. (Schrim Dep. at 18). M.S. never experienced any problems with the product before October 31, 2003. (Schrim Dep. at 19).

On October 31, 2003, M.S. read the directions on the label affixed to the product. (Schrim Dep. at 31). She testified that she had read the directions every time she prepared the product at work since beginning to use the product. (Schrim Dep. at 31). M.S. testified that on the date of the incident she read the directions on the can and followed them. (Schrim Dep. at 1). The directions instructed:

> Microwave Directions: **SHAKE BEFORE OPENING**
> *Microwave ovens vary.  Time given is approximate.*
> 1. Remove plastic cap, set aside.  Do not heat soup with cap on.
> 2. Pull tab to **remove metal lid** and discard.
>    Remaining metal rim is microwaveable.
> 3. Microwave **uncovered** on **HIGH 1 min. 15 sec.** (For Convenience Store (1700 watt) oven, microwave **uncovered** on **HIGH** 45 sec.)
> 4. Careful, leave in microwave 1 min., then **stir thoroughly** for even soup temperature
> 5.  Replace plastic cap.
> Note: After tasting, if you like warmer soup, remove cap and heat an additional 15 sec.
> **CAUTION:** Metal edges are sharp.  Container and soup are **HOT** after heating.

Def. App., Ex. B (Soup at Hand label) (the "label") (emphasis in original).[1]

    M.S. testified that she could not recall for how long she ordinarily would heat the product; M.S., however, indicated that she typically heated other food items brought from home for four minutes. (Schrim Dep. at 25). M.S. acknowledged that the heating time on the label affixed to the product is one minute and fifteen seconds. (Schrim Dep. at 71); see (Def. App. Ex. B). M.S. testified that the microwave could be set to exactly one minute and fifteen seconds on high. (Schrim Dep. at 71). The photograph of the microwave shows that the microwave cannot be set to include exact seconds because the microwave time is controlled by a dial and that the recommended time on the microwave for preparing soup is between two and four minutes. (Def. App. Ex. C) (photograph of microwave) (the "photo"). The dial on the microwave indicates a marking for each minute, as well as another marking between each minute marking. Id. There does not appear to be a way to set the microwave for exactly one minute and fifteen seconds as M.S. testified that she did. Id.

    When giving her deposition, M.S. reviewed the label. (Schrim Dep. at 70). Throughout this review, M.S. indicated that she recalls direction number four, warning consumers to leave the product in the microwave for one minute after heating before handling it, which she indicated she did not do on the day of the incident or any day prior to the incident when she prepared the product. (Schrim Dep. at 73). In addition, M.S. testified that she had not heated the product for an additional fifteen seconds as the directions noted may be necessary for warmer

---

[1]     The label attached as Def. App., Ex. B is not the actual label from the can of soup that M.S. prepared on the date of the incident. (Schrim Dep. at 43 and 71). The parties stipulate that the label attached is a copy of the label that would have been affixed to the product on the day of the incident.

soup. (Schrim Dep. at 76). Furthermore, M.S. testified in her deposition that she knew the soup would be hot on October 31, 2003, and had never experienced a time when she thought the soup was too hot. (Schrim Dep. at 76-77).

Throughout her deposition, M.S. testified several times that she read the directions on the label on the day of the incident and all other times she had used the product. (Schrim. Dep. at 25, 31, 32, 75 ). For example, M.S. testified:

> Q: Do you know whether or not you read the instructions on the product the day that your accident happened?
>
> A: Yes
>
> Q: You remember that affirmatively?
>
> A: Yes.
>
> Q: Do you believe you followed the instructions on the day of the accident?
>
> A: Yes.

(Schrim Dep. at 31). M.S., however, also indicated that she did not wait the instructed one minute before removing the product from the microwave. (Schrim Dep. at 26, 31, 73, 75, 76, 96). She testified:

> A: The bell would ding and I would open it up and remove it.
>
> Q: When you say "open it up," what do you mean?
>
> A: Open the door of the microwave.

(Schrim Dep. at 26).

M.S. testified that after she heated the product, the microwave's timer went off and she <u>immediately</u> put her hand into the microwave to remove the product, contrary to direction number four on the label. (Schrim Dep. at 73, 75). The direction stated, "4. Careful, leave in microwave 1 min., then **stir thoroughly** for even soup temperature." (label). Plaintiff testified:

> Q: Okay. Now, No. 4, it says, "Careful, leave in microwave 1 min." You didn't do that, did you?
>
> A: No, I don't think I did. No.
>
> Q: You never did that?
>
> A: No.
>
> Q: You would hear it ding and you'd open up the door and you'd take it out?
>
> A: Right.
>
> Q: Okay. And that's what you did on this day, you heard it ding, you put your hand in?
>
> A: Yes.
>
> * * *
>
> Q: But we know you didn't wait a minute; is that correct?
>
> A: Uh-huh.
>
> Q: Is that correct, you did not?
>
> A: You mean wait a minute before I open the door?
>
> Q: Yes.
>
> A: No; the bell ran and I opened the door.
>
> Q: And you immediately put your hand in to take the product out?

5

   A: Yes.

(Schrim Dep. at 73, 75).

  When plaintiff put her hand immediately into the microwave, the product was bubbling and overflowed onto her hand. (Schrim Dep. at 77 and 96). M.S. contends the overflowing of the product resulted in a burn to her hand. (Schrim Dep. at 33, 41).[2] She testified that "it was like a volcano, you know, the tomato soup just bubbled up and went over on my hand and burned it." (Schrim Dep. at 31). Defendants characterize the event as "some of the hot soup bubbled onto her hand." (Joint Concise Statement of Material Facts ("JCSMF") at 1 ). M.S. asserts that nearly three quarters of the container spilled onto her hand and the microwave.[3] (Schrim Dep. at 32-33).

  After the product spilled, M.S. testified that she went into the bathroom and placed her affected right hand in cold water for an unknown amount of time. (Schrim Dep. at 42). For an additional ten minutes, she testified that she continued to go back and forth between the bathroom and another location until her co-worker arrived. (Schrim Dep. at 42). Before the arrival of her co-worker, M.S. testified that she threw away the soup container. (Schrim Dep. at 43). When her co-worker arrived, plaintiff described the course of events to that co-worker,

---

[2] Plaintiff submitted no supporting documentation showing a burn to her hand. Plaintiff submitted no photographs, medical records, or other evidence that her hand was injured or to what extent it was injured.

[3] The record is unclear with respect to whether some of the contents of the product had overflowed into the microwave prior to M.S. reaching into the microwave to pick up the can or whether the contents had spilled into or onto the microwave at the same time or after the contents spilled onto her hand. M.S., however, asserts that she had only pulled her hand out of the microwave a couple of inches when she was burned because the overflow was on the glass microwave plate. (Schrim Dep. at 96).

Julie Sardon. (Schrim Dep. at 43). Ms. Sardon told her to go home. (Schrim Dep. at 43). M.S. instead went to her standing hair appointment. (Schrim Dep. at 42-43). When M.S. arrived at her hairdresser's shop, the hairdresser told her to contact her doctor, which she testified that she did. (Schrim Dep. at 43).[4]

### *Standard of Review*

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 249. The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment. Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35, 39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other

---

4   There is no evidence of record that M.S. went to the doctor's office other than M.S.'s testimony or that she was harmed or that there was a burn on her hand.

papers that have been identified by affidavit or *otherwise made admissible in evidence*") (emphasis added). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In addition, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting FED. R. CIV. P. 56(e)).

*Analysis*

**I.      M.S.'s Claim of Strict Liability against manufacturer, Campbell Soup**

**A.      Strict Product Liability for Failure to Warn**

This case involves claims of strict product liability based upon alleged failure to warn in connection with M.S.'s preparation of Soup at Hand, a product manufactured by Campbell Soup. The incident in question took place in the Commonwealth of Pennsylvania and there is no dispute that the substantive law of the Commonwealth of Pennsylvania applies. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

The Pennsylvania Supreme Court has adopted section 402A of the Restatement (Second) of Torts regarding products liability. Pavlik v. Lane Ltd./Tobacco Exporters Int'l, 135 F.3d 876, 881 (3d Cir. 1998).[5] Section 402A "imposes strict liability on the purveyor of a product in a

---

5      Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby

8

defective condition 'unreasonably dangerous to the user or consumer.'" Id. (citing Webb v. Zern, 220 A.2d 853 (Pa. 1966)). "Under § 402A, an otherwise properly designed product may still be unreasonably dangerous (and therefore 'defective') for strict liability purposes if the product is distributed without sufficient warnings to apprise the ultimate user of the latent dangers in the product." Id. (citing Davis v. Berwind Corp., 690 A.2d 186, 190 (Pa. 1997)); see Berkebile v. Brantly Helicopter Corp., 337 A.2d 893, 902 (Pa. 1975)("A 'defective condition' is not limited to defects in design or manufacture. The seller must provide with the product every element necessary to make it safe for use. One such element may be warnings and/or instructions concerning use of the product.").

The United States Court of Appeals for the Third Circuit identified three elements a plaintiff must prove under Pennsylvania law to recover under section 402A:

> (1) that the product was defective;
> (2) that the defect was a proximate cause of the plaintiff's injuries; and
> (3) that the defect causing the injury existed at the time the product left the seller's hands.

Pavlik, 135 F.3d at 881 (citing Davis, 690 A.2d at 190; Berkebile, 337 A.2d at 902). In the context of a failure-to-warn case, the second element is refined to require that a plaintiff must establish that it was "the total lack or insufficiency of a warning that was both a cause-in-fact

---

    caused to the ultimate user or consumer, or to his property, if
        (a) the seller is engaged in the business of selling such a product, and
        (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
    (2) The rule stated in Subsection (1) applies although
        (a) the seller has exercised all possible care in the preparation and sale of his product, and
        (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS § 402A.

and the proximate cause of the injuries." Id. (citing Conti v. Ford Motor Co., 743 F.2d 195, 197 (3d Cir. 1984); Grenier v. Volkswagenwerk Aktiengesellschaft, 540 F.2d 85 (3d Cir. 1976)). "While the question of causation in Pennsylvania is normally for the jury, 'if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law.'" Id. (quoting Conti, 743 F.2d at 197-98, which quoted Liney v. Chestnut Motors, Inc., 218 A.2d 336, 338 (Pa. 1966)).

In addition, the Pennsylvania Supreme Court has held the determination that a product is defective due to inadequate warning is "initially a question of law" for the trial judge and not the jury. Nowak v. Faberge USA Inc., 32 F.3d 755, 757 (3d Cir. 1994) ("Under Pennsylvania law, whether a product is defective under the facts alleged by the plaintiff is initially a question to be answered by the trial judge") (citing Mackowick v. Westinghouse Elec. Corp., 575 A.2d 100, 102 (Pa. 1990)).

**B.  Adequateness of Warning**

Under Pennsylvania strict products liability law, a product can be defective if the manufacturer has distributed the product to the intended user without adequate warning of the dangers inherent in the product. Pavlik, 135 F.3d at 881. A duty to warn adequately does not arise with respect to every danger that could be connected with use of the product. In Verna by Verna v. U.S. Suzuki Motor Corp., 713 F.Supp. 823, 828 (E.D.Pa. 1989), the district court in addressing the duty to warn under Pennsylvania law quoted from comment (k) to section 388 of the Restatement (Second) of Torts regarding latent defects, noting "[i]t is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual

10

looking over will disclose . . . ." Warnings must be directed to the understanding of the intended user and notify intended users of unobvious dangers. Mackowick, 575 A.2d at 102. That is,

> [t]he duty to adequately warn does not require the manufacturer to educate a neophyte in the principles of the product. A warning is sufficient if it adequately notifies the intended user of the *unobvious* dangers inherent in the product.

Id. (emphasis in original); see Pavlik, 135 F.3d at 881 (citing Davis, 690 A.2d at 190; Berkebile, 337 A.2d at 902).

In addition to whether a warning was adequate, there may be circumstances under which "[if the] plaintiff places himself in a position of danger, while consciously aware and appreciating the danger, and not as a result of momentary inattention or inadvertence, he may be found to have assumed the risk, thus precluding liability." McLaughlin v. Fellows Gear Shaper Co., 786 F.2d 592, 598 (3d Cir.1986) (citing Elder v. Crawley Book Machinery Co., 441 F.2d 771 (3d Cir. 1971); Burch v. Sears Roebuck and Co., 467 A.2d 615, 619 (Pa. Super. Ct. 1983)).

Here, the undisputed evidence produced by defendants supports a conclusion that no reasonable jury could find that the warning was inadequate. The product, therefore, cannot be defective. For example, the label affixed to the product stated in relevant part:

> 4. Careful, leave in microwave 1 min., then **stir thoroughly** for
>    even soup temperature . . . .
> Note: After tasting, if you like warmer soup, remove cap and heat
> an additional 15 sec.
> **CAUTION:** Metal edges are sharp. Container and soup are **HOT**
> after heating.

(label) (emphasis in original). The label clearly warns consumers that the product will be hot after heating in the microwave and that caution is necessary to ensure that the soup will not be too hot to handle immediately after heating. In addition, the label warns consumers to be careful

11

and provides the user with directions to avoid being burned by instructing consumers "Careful, leave in microwave 1 min., then **stir thoroughly** for even soup temperature." (label).

M.S. had past experience with the product. She experienced the product being hot in the past and heated it for the purpose of making it hot for consumption. M.S. admitted that she was on notice that the contents were going to be hot. M.S. testified:

> Q: So, before October 31, 2003, you knew that the soup was going to be hot?
>
> A: Yes.
>
> Q: You expected the soup to be hot?
>
> A: Yes.
>
> Q: You wanted the soup to be hot?
>
> A: Well . . . .
>
> Q: It's soup.
>
> A: Yes, better than cold soup.

Schrim Dep. at 77.

It is a matter of general knowledge and expectation that soup of this type would be served hot. The label instructs that the product may be placed in the microwave for the purpose of heating and the "Container and soup are **HOT** after heating." (label) (emphasis in original). In addition, the label specifically instructs that consumers leave the product in the microwave for one minute after heating before handling it. In light of that language, no reasonable jury could find that the label was insufficient to warn a consumer that the product would be hot after it was heated in a microwave.

C.   **Proximate Causation**

In Pavlik, the court of appeals recognized that there are two kinds of causation relevant in a strict product liability failure-to-warn case: cause-in-fact and proximate causation. Pavlik, 135 F.3d at 902. There is no serious dispute with respect to cause-in-fact in this case; defendants' motion for summary judgment focuses on proximate causation. Defendants do not dispute that any injury to M.S. was the result of the overflow of the product onto her hand. Defendants do, however, dispute that there was a defect in the product that was the proximate cause of her injury.

The proximate cause argument in a failure-to-warn case must focus on "the additional precautions that *might* have been taken by the end user had the allegedly defective warning been different." Pavlik, 135 F.3d at 882 (emphasis in original) (citing Powell v. J.T. Posey Co., 766 F.2d 131, 135 (3d Cir. 1985)). Comment j to section 402A provides that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded." Id. at 883 (quoting RESTATEMENT (SECOND) OF TORTS § 402A cmt. j). "Generally speaking, comment j sets forth a presumption that works in favor of the manufacturer or seller of a product where an adequate warning has been provided." Id. (citing Coffman v. Keene Corp., 608 A.2d 416, 421 (N.J. Super. 1992), aff'd, 628 A.2d 710 (N.J. 1993); Technical Chemical Co. v. Jacobs, 480 S.W.2d 602, 606 (Tex.1972)). It also implies that the law will presume that, when no warning or an inadequate warning is provided, the consumer would have read and heeded an adequate warning if one had been given. Id. (citations omitted). The court of appeals thus predicted that Pennsylvania would adopt a rebuttable heeding presumption as a logical corollary to comment j. Id.

When considering proximate cause issues in a failure-to-warn case, such as this case, therefore, there is a rebuttable presumption that the warnings given will be heeded by the consumer. See RESTATEMENT (SECOND) TORTS § 402A cmt. j) ("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."). If a consumer does not follow directions, however, the court must inquire whether additional warnings would have changed the behavior. See Petree v. Victor Fluid Power, Inc., 831 F.2d 1191, 1195 (3d Cir. 1987) ("In order for the plaintiff to raise a jury question as to whether the failure to warn of latent dangers was the cause-in-fact and proximate cause of his or her injuries, there must be enough evidence to support a reasonable inference, rather than a guess, that a warning may have prevented the accident.") (citing Conti, 743 F.2d 195 at 197 ).

In Conti, the United States Court of Appeals for the Third Circuit reversed the decision of the district court denying the defendant Ford Motor Company's post-trial motion for judgment notwithstanding a verdict in the plaintiffs' favor on a failure-to-warn theory. The plaintiffs in that case alleged that the plaintiff-wife was injured when, as she was in the process of entering the passenger side of a vehicle manufactured by the defendant, her husband turned the ignition key while the car was in gear without disengaging the clutch causing the car to lurch backwards and the plaintiff-wife to lose her balance and fall. Id. at 196-97. The court of appeals reversed the district's decision denying the defendant's motion for judgment after the verdict holding that the defendant in that case was entitled to judgment as a matter of law because the plaintiffs failed to prove that the existence of any additional warning may have forestalled the plaintiff-


Case 2:05-cv-01496-JFC Document 42 Filed 08/16/07 Page 14 of 19

When considering proximate cause issues in a failure-to-warn case, such as this case, therefore, there is a rebuttable presumption that the warnings given will be heeded by the consumer. See RESTATEMENT (SECOND) TORTS § 402A cmt. j) ("Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."). If a consumer does not follow directions, however, the court must inquire whether additional warnings would have changed the behavior. See Petree v. Victor Fluid Power, Inc., 831 F.2d 1191, 1195 (3d Cir. 1987) ("In order for the plaintiff to raise a jury question as to whether the failure to warn of latent dangers was the cause-in-fact and proximate cause of his or her injuries, there must be enough evidence to support a reasonable inference, rather than a guess, that a warning may have prevented the accident.") (citing Conti, 743 F.2d 195 at 197 ).

In Conti, the United States Court of Appeals for the Third Circuit reversed the decision of the district court denying the defendant Ford Motor Company's post-trial motion for judgment notwithstanding a verdict in the plaintiffs' favor on a failure-to-warn theory. The plaintiffs in that case alleged that the plaintiff-wife was injured when, as she was in the process of entering the passenger side of a vehicle manufactured by the defendant, her husband turned the ignition key while the car was in gear without disengaging the clutch causing the car to lurch backwards and the plaintiff-wife to lose her balance and fall. Id. at 196-97. The court of appeals reversed the district's decision denying the defendant's motion for judgment after the verdict holding that the defendant in that case was entitled to judgment as a matter of law because the plaintiffs failed to prove that the existence of any additional warning may have forestalled the plaintiff-

husband's inadvertence in failing to disengage the clutch while starting the car in gear.  Id. at 197.  The court of appeals noted that "[a]lthough the question of causation is normally for the jury, 'if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law.'"  Id. at 197-98 (quoting Greiner, 429 F.Supp. at 497)).  As noted in Petree and above, the court of appeals in Conti explained that "[w]here the theory of liability is failure to warn adequately, the evidence must be such as to support a reasonable inference, rather than a guess, that the existence of an adequate warning may have prevented the accident before the issue of causation may be submitted to the jury."  Id. at 198.

In Conti, the plaintiffs alleged that the defendant's failure to place a "reminder" warning in the car's interior resulted in the plaintiff-husband's action starting the standard transmission car while in the reverse gear and without disengaging the clutch.  Id.  While the district court submitted this issue of causation to the jury, which seemingly found that the lack of an adequate warning did result in the fall and injuries suffered in the fall, the court of appeals "[held] that the district court erred in submitting the causation issue to the jury and in not finding that [the plaintiffs] had failed as a matter of law to show the connection between the existence of an adequate reminder warning and the possible prevention of the accident."  Id.  The court of appeals reasoned that, as the court read the record, there was no dispute regarding the material facts; the plaintiff-husband was an experienced driver; he had read the owner's manual that came with the car and which contained a specific instruction with respect to depressing the clutch; he testified that he knew that he would need to depress the clutch in such a circumstance; and when questioned why he did not depress the clutch on the date of the incident, he indicated that he did

15

not know why he had failed to do so.  Id.  The court of appeals noted that "[i]ndeed, it is clear from the record that [the plaintiff-husband] was not paying attention to what he was doing when he started the car without disengaging the clutch."  Id.  The court of appeals held:

> **We find the evidence insufficient as a matter of law to support a reasonable inference that the existence of additional warnings may have prevented the accident from occurring.**  There is absolutely no evidence in the record to suggest that Mr. Conti would have paid any greater attention to what he was doing when starting the car if additional warnings were contained in Ford's operator manual, or even if a sticker reminding the operator to disengage the clutch before starting the car in gear was prominently displayed in the interior of the car.  Rather, the jury's conclusion was based on the mere speculation that if Mr. Conti's eyes had caught a sticker warning him to depress the clutch pedal as he was talking to his wife, he may have remembered to either shift the car to neutral or to disengage the clutch prior to starting the car.  **Ford cannot be held liable on a failure-to-warn theory merely because a jury concludes that more warnings are needed to remind drivers of the intricacies of standard transmissions. Rather, liability may result only when there is sufficient evidence that additional warnings or reminders may have made a difference**.  See, e.g., Sherk v. Daisy-Heddon, A Division of Victor Comptometer Corporation, 498 Pa. 594, 450 A.2d 615 (1982).

Id. at 198-99 (emphasis added); see Davis, 690 A.2d at 191 (warnings would be "meaningless" if a "manufacturer must anticipate that the user will engage in the precise conduct which the warning cautions against").

      The same reasoning applies in this case.  Here, an adequate warning has been provided and Campbell Soup adduced undisputed evidence that M.S. did not heed the warning.  Campbell Soup produced evidence and the record is unequivocal that M.S. was fully aware of the risk of bodily injury from preparing the product by heating it in the microwave; that she was aware of the directions, including the specific direction to leave the soup in the microwave for one minute

16

after heating and to take caution because the container and soup would be hot after heating; and that she did not follow them. Specifically, M.S. admitted in her deposition that she did not follow the direction and wait one minute before removing the soup from the microwave, but instead immediately reached in to remove the soup after it finished heating. (Schrim Dep. at 73, 75). In such a situation, plaintiff cannot prevail on her strict liability failure-to-warn case against Campbell Soup. Under these circumstances, no reasonable jury could find in favor of M.S. on her claim for failure to warn against Campbell Soup. Defendants' motion for summary judgment with respect to the failure-to-warn claim by M.S. against Campbell Soup will be granted.

**II. Plaintiff's Claim of Strict Liability against Seller Target Corporation**

Plaintiffs argue that Target should be held strictly liable as a distributor of the product because suppliers of a defective product can be held liable for a defective product because they have a duty to the consumer and to not distribute defective products. Under section 402A, a seller of products can be held liable for a defective product under strict liability if the defects in the product are present when it reaches the consumer's hands. In this case, however, in large part because M.S. disposed of the product on the day of the incident and there is no evidence of the condition of the product at the time it was distributed by Target, plaintiffs' claim against Target fails.

Defendant Target argues that plaintiffs did not produce any evidence of an old or outdated warning; therefore, there is no way of knowing if the label was old or outdated, and thereby defective, when Target distributed it. Plaintiffs assert that whether the label was old or outdated is a matter in dispute and the case should be allowed to move forward. The court

disagrees. Plaintiffs have produced no evidence to show that the product was old or outdated. M.S., by her own testimony, acknowledged that she disposed of the product on the day of the incident. Neither this court nor a jury can speculate as to the condition of the product, or if a defect existed in the labeling, on the day of the incident. Moreover, in light of the court's holding that defendant Campbell Soup is not liable on a strict product failure-to-warn theory, defendant Target is similarly entitled to judgment as a matter of law.

### III. F.S.'s Claim of Loss of Consortium

F.S. asserts a claim for loss of consortium in connection with M.S.'s alleged injury. Under Pennsylvania law, F.S.'s claim for loss of consortium claims is derivative of M.S.'s strict liability failure-to-warn claims against defendants. See Little v. Jarvis, 280 A.2d 617, 620 (Pa. Super. Ct. 1971) (citing Elser v. Union Paving Co., 74 A.2d 529 (Pa. Super. Ct. 1950) (applying "the well established rule [in loss of consortium claims] that the husband's rights are only derivative of those of his wife in this situation"). In this case, because M.S.'s claims fail as a matter of law, F.S.'s loss of consortium claim also fails as a matter of law. Id.

Moreover, plaintiffs have produced no evidence to substantiate F.S.'s loss of services, society, conjugal affection, association, and companionship required to create a loss of consortium claim. Anchorstar v. Mack Trucks, Inc., 620 A.2d 1120, 1121-22 (Pa. 1993); Steiner v. Bell Telephone Co. of Pennsylvania, 517 A.2d 1348 (Pa. Super. Ct. 1986). There is no deposition, affidavit, or other evidence from F.S. regarding the loss he is claiming to have suffered. See Celotex, 477 U.S. at 322 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

issue for trial.'") (quoting FED. R. CIV. P. 56(e)).  Under these circumstances, no reasonable jury could find in favor of F.S. on his claim for loss of consortium.

### *Order*

**AND NOW**, this 16th day of August, 2007, upon consideration of the parties' arguments and supporting documents, **IT IS ORDERED** that defendants' motion for summary judgment (Doc. No. 26) is **GRANTED** as more fully set forth herein.

The clerk shall mark this case as closed.

By the court:

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge

cc:    Counsel of record